# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**GEORGE RAYMOND JOHNSTON, III,**

    **Plaintiff,**

vs.                                              Case No. 4:11cv21-MP/WCS

**GLENN E. YOUNG, OFFICER BOZEMAN,
DR. BENITO EDOUARD, and
MR. CAPTAIN BALDRIDGE,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Defendants filed a motion to dismiss, doc. 70, and the *pro se* Plaintiff has filed a response, doc. 73.[1]  The motion is ready for a ruling.

**Allegations of the Second Amended Complaint, doc. 23**

Plaintiff alleged that in November of 2008, while at Madison Correctional Institution, the "laundry/security officer" issued him boots that were two sizes too small, and he was ordered to wear them despite his complaints.  Doc. 23, p. 5.  Plaintiff said he is diabetic and complained that his "feet were damaged by a constant lack of

---

[1] Plaintiff filed a document entitled, "petition for leave to reply to Defendants' motion to dismiss."  Doc. 73.  That "petition" was construed not as a motion seeking leave to file a reply, but as Plaintiff's response in opposition.  *See* doc. 74.

circulation." *Id.* Plaintiff contends the "laundry officers" ignored him and were reckless to his needs. *Id.* He further alleged that medical staff contacted laundry about the ill-fitting boots, and in October, 2009, "the laundry officer issued another pair of boots too small, and again ordered Plaintiff to 'wear em!' " *Id.*, at 5. Plaintiff alleged the boots were extremely painful, and that Defendant Bozeman acted deliberately with respect to the problem with the boots to save money. *Id.*

On December 30, 2009, Plaintiff was issued a medical pass for boots size 17 due to damage to his feet caused by wearing boots of the wrong size. *Id.*, at 6. Plaintiff contends that Defendant Bozeman again deliberately ordered size 18 EEE boots because they were cheaper, and threatened Plaintiff to not complain anymore. *Id.* Plaintiff received the boots, now too large, on January 5, 2010, despite his complaints and the issuance of the medical pass. *Id.* Plaintiff said they caused painful blisters on his feet. *Id.* Plaintiff again filed grievances concerning this issue and, nearly two months later, Plaintiff "was issued a properly fitting pair of boots" by Pride, but within two weeks, Defendant Young ordered the seizure of Plaintiff's boots "due to 'complaints' about prior sizes and injuries." *Id.* Defendant Bozeman seized Plaintiff's boots on March 31, 2010, but the very next day, Pride issued Plaintiff "another pair of properly fitting boots, so [Plaintiff] could keep his job at Pride." *Id.* Defendant Young then had Plaintiff terminated from Pride because of Plaintiff's grievances about the boots, and Plaintiff contends this act to punish him was done in violation of his due process rights. *Id.*, at 6-7.

Plaintiff was transferred from Madison Correctional Institution to Avon Park Correctional Institution on August 1, 2010, and as he was leaving, Defendant "Bozeman

Case No. 4:11cv21-MP/WCS

again seized Plaintiff's" second pair of properly fitting boots.  *Id.*, at 7.  Plaintiff contends that on December 18, 2010, he "sustained an injury that could" have been avoided if Plaintiff had not had these boots seized.[2]  *Id.*  Plaintiff contends that he was not given prompt medical treatment and was left for hours in "unbearable pain."  *Id.*  He was eventually taken to the medical department, and via telephone, Defendant Edouard (the physician) prescribed an ace bandage, crutches, and Ibuprofen.  *Id.*  Plaintiff alleges this "quick telephonic medical assessment" was deliberately indifferent to Plaintiff's serious medical needs.  *Id.*, at 8.  Plaintiff contends he pleaded with the nurse to call the doctor back and to check his medical files because Plaintiff believed he needed to be seen in the emergency room and possibly needed urgent surgery.  *Id.*  Plaintiff was not successful and alleged that Defendant Edouard rendered inadequate medical care.  *Id.*

    Plaintiff said he had an appointment with Defendant Edouard two days later, but it was canceled by the Defendant.  *Id.*, at 8–9.  Plaintiff explained repeatedly that he could not bear the pain of walking on the crutches, but his grievances were denied.  *Id.*, at 9.  Plaintiff alleged that he filed a grievance declaring a medical emergency, but Defendant Baldridge cancelled the medical emergency and denied Plaintiff's request.  *Id.*  Plaintiff contends the actions of Defendant Baldridge were callous and reckless.  *Id.*

    Plaintiff complained that after more than eighty days, and several more falls while trying to walk on the crutches, he was finally approved for "urgent surgery" after Defendant Edouard reviewed the MRI results.  *Id.*, at 10.  Plaintiff contends Defendant

---

    [2] It appears that Plaintiff tripped and fell, injuring himself, and he suggests it was because the Department of Corrections provided him "excessively large and cumbersome ill-fitting boots."  Doc. 23, p. 4.

Edouard was deliberately and maliciously indifferent to his needs by the delay in medical treatment and forcing Plaintiff to endure pain and suffering. *Id.*

**Defenses Raised**

The four Defendants filed a motion to dismiss, doc. 70, asserting Eleventh Amendment immunity, failure to state a claim under the Eighth Amendment for ill-fitting boots, failure to state a due process claim in assignment of the job or the boots, failure to state a claim against Defendant Young, and improper joinder of Defendants Edouard and Baldridge. Doc. 70, p. 1. Defendants also assert that Plaintiff failed to exhaust administrative remedies for the claims against Defendants Edouard and Baldridge. *Id.*

**Plaintiff's Response, doc. 73**

Plaintiff contends Defendants are not entitled to any immunity, that they violated his rights and have "misconstrued Plaintiff's details, basis, and cause of action in his claims, to ad [nauseam]." Doc. 73, p. 2. Plaintiff contends he has exhausted administrative remedies for each Defendant and that joinder of claims, parties and actions qualifies as special joinder, as is appropriate for his unique circumstances . . . ." *Id.* Plaintiff urges the motion to dismiss be denied.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966. A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

**Analysis**

**Eleventh Amendment immunity and "person" under § 1983**

A § 1983 suit against either the state, or an agency of the state, is absolutely barred by the Eleventh Amendment, absent a waiver of the immunity. *See* Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Gamble v. Florida Department of Health and Rehabilitative Services, 779 F.2d 1509 (11th Cir. 1986). Claims against state employees sued in their official capacity cannot proceed as the Supreme Court has held that state officials acting in their official capacities are not "persons" for purposes of Section 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), *cited in* Carr, 916 F.2d at 1525, n.3. Thus, the claims cannot proceed against Defendants in their official capacity and must proceed solely in their individual capacities.

**Exhaustion**

The claims raised by Plaintiff may be broken down into two groups (1) claims arising at Madison Correctional Institution against Defendants Young and Bozeman, and (2) claims at Avon Park Correctional Institution against Defendants Edouard and Baldridge. Defendants raise the exhaustion defense only as to the claims raised against the latter, Defendants Edouard and Baldridge. Doc. 70, pp. 14-18.

In enacting the Prison Litigation Reform Act, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v.

Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323. Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[4].

    A prisoner must comply with the process set forth and established by the State's grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance. *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373. If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at

---

[4] The Court concluded that the statute does not impose "a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (stating "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75. When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs, "which permits courts to hear evidence outside of the

record on affidavits submitted by the parties." *Id.*, at 1377, n.16.  Further, a credibility finding may be made after review of the relevant documentary evidence.  *Id.*

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.  The Department's grievance process is exhausted when an inmate files an informal grievance, a formal grievance, and then a grievance appeal to the Secretary's Office.  Doc. 70, p. 16.  Plaintiff filed only two grievance appeals between August, 2010, and January, 2011.  Doc. 70, p. 7; *see* doc. 70-1 (Defendants' Ex. A).

A grievance appeal to the Office of the Secretary "must be *received* within 15 calendar days from the date of the response to the formal grievance."  FL. ADMIN. CODE 33-103.011(c) (emphasis added).  "Appeals and direct grievances to the Office of the Secretary shall be turned over that same date to the Bureau of Inmate Grievance Appeals which shall ensure that the grievance is date-stamped in on the date of receipt."  FL. ADMIN. CODE 33-103.007(3).  "The decision of whether or not the grievance has been timely filed by the inmate shall be made based upon the following comparisons:  (a) In the case of an appeal being filed with the central office, by comparing the receipt date on the DC1-303 form to the response date of the formal grievance."  FL. ADMIN. CODE 33-103.007(3)(a).  A grievance to the Secretary not received within the 15 day period may be returned without processing.  FL. ADMIN. CODE 33-103.014(h).

The "receipt date on the DC1-303 form" refers to the process for recording the "receipt" of an appeal to the Secretary.  It provides a benefit to the prisoner because the date of receipt is the date that the grievance is submitted to the institution according to

the Rules, not the date it actually gets to Tallahassee. Florida Administrative Code 33-103.006(8) provides that "Inmates who are filing grievances that require mailing shall be required to utilize the procedure set forth in this rule when processing their grievances or appeals to the reviewing authority of community facilities or the Bureau of Inmate Grievance Appeals in the central office." It also provides that the institution must establish "a logging and tracking system to record and document receipt and mailing of inmate grievances." FL. ADMIN. CODE 33-103.006(8)(b). It provides that the staff person who accepts the grievance must complete the receipt portion on the DC1-303 form. FL. ADMIN. CODE 33-103.006(8)(c)1.

Finally, a prisoner may bypass this procedure by submitting his grievance in a sealed envelope and place the grievance in "institutional bulk mail that is to be mailed daily to central office." FL. ADMIN. CODE 33-103.006(8)(d) and (e). If this happens, however, the "receipt" date will be the date that the Central Office actually receives the mail and date stamps the receipt as provided in FL. ADMIN. CODE 33-103.007(3). Mailing in a sealed envelope, however, was not a procedure available to Plaintiff. The by-pass sealed envelope procedure is limited to emergency grievances, grievances of reprisals, grievances of a sensitive nature, and grievances alleging a violation of the Health Insurance Portability and Accountability Act. FL. ADMIN. CODE 33-103.007(6)(a)3.

The first appeal was dated by Plaintiff on January 9, 2011. Doc. 70-2 (Ex. B). At the bottom of the first page is a section that is entitled "Receipt for Appeals Being Forwarded to Central Office." *Id.*, p. 1. It has a space for dating the submission, a signature for the staff member who receives the grievance appeal, and a place for an

institutional mail log number.  *Id.*  Those spaces are blank.  *Id.*  The appeal was stamped "Received" in the Department of Corrections' Inmate Grievances Bureau on January 19, 2011.  *Id.*  It was "returned without action" because it was not "*received*" "within 15 calendar days of the institutional response."  *Id.*, at 5 (emphasis added).  Furthermore, the response noted the appeal was not "receipted at the local" institution as required by Rule 33-103.006(8), which may have "contributed to" Plaintiff's failure to file the grievance timely.  *Id.*

The second grievance appeal was dated by Plaintiff January 10, 2011, also lacked a receipt or log from the institution, but contains a "received" stamp date of January 19, 2011, by the Department's Inmate Grievances Bureau.  Doc. 70-3 (Ex. C), p. 1.  The result for this grievance was the same:  it was "returned without action" for noncompliance with the rules requiring submission "within 15 calendar days of the institutional response."  *Id.*, at 5.  The response noted that Plaintiff failed to have the appeal receipt at the local institution.  *Id.*  Moreover, the response advised Plaintiff that his complaint against staff (Defendant Baldridge) was "a separate issue and should be grieved as such" at the appropriate level.  *Id.*

Plaintiff did not properly submit his two grievance appeals in a timely fashion. Even if he were entitled to by-pass the institutional receipt procedure and send them in a sealed envelope (and he was not), they did not get to the Central Office until the 16th day.[5]  There was no other "receipt" date available to him since he did not have the

---

[5] It is possible that even if he was not permitted to mail the grievance appeal in a sealed envelope, the Secretary would have considered the grievance to have been timely filed if received in the Central Office on January 18, 2011.

receipt filled out on the DC1-303 form.[6]  An inmate must comply with the rules to "properly exhaust" his administrative remedies and because Plaintiff did not, the claims against Defendants Edouard and Baldridge should be dismissed for failure to exhaust administrative remedies.

### Claims against Defendant Young

Defendant Young, the assistant warden at Madison Correctional Institution, is alleged to have seized Plaintiff's boots and changed Plaintiff's job assignment in retaliation for filing grievances or complaints in violation of the First Amendment.  *Id.*, at 11.  Plaintiff alleged the deprivation of boots caused pain and suffering in violation of his Eighth Amendment rights.  *Id.*

The motion to dismiss asserts that a claim for improper fitting boots is insufficient because problems such as foot and toe fungus, numbness, foot discoloration, and blisters are not "serious medical needs" and, therefore, the claim fails to state a viable Eighth Amendment claim.  Doc. 70, p. 10.  Several unpublished cases are attached to the motion to support that assertion.  *Id.*, Exs. D and E.

Brinkman v. Schriro, 2010 WL 2035594 (D. Ariz. May 20, 2010) (No. CV 06-0512-TUC-CKJ), was decided at summary judgment and not on a motion to dismiss.  Doc. 70, Ex. D.  Moreover, the inmate's claim for issuance of boots that were too small

---

[6] It may be that Plaintiff submitted his grievance appeals for mailing on the date he signed them, January 9, 2011, and it took until January 19, 2011, to reach the Central Office.  It is noted that he certified that he submitted his initial complaint for mailing on January 11, 2011, but it did not reach the Clerk of this court until January 19, 2011.  Doc. 1, pp. 1 and 8.  But this is not relevant for the reasons discussed above.  The date of "receipt" as defined by the Department's rules is the relevant date for the 15 day limitations period.

was not causally linked to the defendants and was held to be barred by the statute of limitations. That the inmate had "mild bunions" was insufficient to demonstrate a medical need for special tennis shoes, and the court held that an arthritic condition in the great toe and a foot fungus were "either not serious medical needs or the evidence shows they were adequately treated." Doc. 70-4 (Ex. D), pp. 9-10. There was no allegation that the prisoner had diabetes. Those facts are distinguishable from the case at bar because this is a motion to dismiss, not a motion for summary judgment, and Plaintiff has alleged that he is diabetic, a potentially serious medical condition making boot problems more than insignificant.

     Defendants point to Kellam v. Hunt, 2007 WL 2764814 (N.D. N.Y. Sep. 20, 2007) (No. 9:04-CV-1225 (LEK/GJD)), which was dismissed partly on the grounds that the inmate failed to notify the court of a change in address, and also at the summary judgment stage, finding that Plaintiff was offered wide boots of the proper width and size, but Plaintiff refused the boots. Doc. 70-5 (Ex. E). In granting summary judgment in favor of Defendants, the court found that Plaintiff failed to show a serious medical need because the medical records revealed that Plaintiff only complained of "painful callouses," did not later complain of foot pain or request special shoes or even inserts from the doctor, and his own testimony showed he did not experience a serious medical need. *Id.*, at 5. The prisoner did not allege that he had diabetes. That case is also distinguishable as it was on summary judgment and not a motion to dismiss.

     Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical

need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). An Eighth Amendment claim requires allegations of "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

An inmate who is diabetic and suffers with problems in his feet or toes is at a higher risk of serious harm that a non-diabetic inmate. *See* Milton v. Turner, 445 Fed.Appx. 159, 163, 2011 WL 3654392, at *3 (11th Cir. 2011) (noting that a diabetic inmate with an infected big toe has a serious medical need). When the failure to treat a condition would result in significant further injury or the unnecessary infliction of pain,

the medical need *may* be found to be serious.  At least at this stage, this states a plausible serious medical need.

In this case, Plaintiff alleged that Defendant Young ordered the seizure of Plaintiff's boots because of Plaintiff's complaints of foot problems and ill fitting boots.  Doc. 23, p. 6.  Plaintiff said that after submitting many complaints, he finally received a medical pass for proper boots, and on March 15, 2010, Plaintiff was issued a  "properly fitting pair of boots" by Pride, where Plaintiff was assigned to work.   It is alleged that Defendant Bozeman then seized those boots on March 30th, at the direction of Defendant Young.  *Id.*

Plaintiff's factual allegations must be accepted as true at this stage of the proceedings.  Plaintiff alleged that the seizure of Plaintiff's boots was done because of his grievances and complaints, which infers that Defendant Young knew of Plaintiff's complaints about prior wrong boot sizes and injuries to his feet, and had knowledge that Plaintiff is diabetic and suffers from diabetic foot problems.  In particular, Plaintiff alleged that on March 12, 2010, he filed a grievance which advised that Plaintiff experienced the painful loss of toe nails, a severe foot and toe fungus, burning and peeling skin, numbness, and foot discoloration.  Doc. 23, p. 6.  It must be accepted that Defendant Young knew of Plaintiff's medical condition from the grievances and was subjectively aware of a potentially serious medical problem.  By Defendant Young's role in the seizure of Plaintiff's boots, it raises a plausible claim that the Defendant did so intentionally to cause Plaintiff pain and suffering, and exacerbate Plaintiff's problems.  Plaintiff has sufficiently alleged that he had an objectively serious medical need as a diabetic inmate with ongoing foot problems, that Defendant Young was aware of those

problems, and that by seizing Plaintiff's boots, he was intentionally acting to create more pain. It cannot be said at this stage in the proceedings that Plaintiff has failed to state an Eighth Amendment claim against Defendant Young for seizing Plaintiff's boots, and the motion to dismiss should be denied on this ground.

Plaintiff also has alleged that Defendant Young's actions were taken due to Plaintiff's having filed grievances. "It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights." Pate v. Peel, 256 F.Supp.2d 1326, 1336 (N.D. Fla. 2003), *citing* Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.1997); Wright v. Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986). Prison officials may not infringe on an inmate's First Amendment right to petition the government for a redress of his grievances with a practice that is "not reasonably related to legitimate penological objectives" or take certain actions "with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995), *citing* Turner v. Safley, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989); *see also* Pate, 256 F.Supp.2d at 1336. Retaliation in the prison setting may be established by demonstrating that a prison official took adverse actions against an inmate because he filed a grievance. *See* Farrow, 320 F.3d at 1248; Pate, 256 F.Supp.2d at 1336.

Plaintiff has alleged that he made numerous complaints and that he suffered an adverse action because of those grievances. Plaintiff has alleged the seizure of beneficial boots, and then when he was able to obtain another pair of boots from Pride

where he worked, he was terminated from Pride. Construed liberally, and accepting these allegations as true, Plaintiff has stated a claim.

Defendant argues that as a single officer, he is not responsible for changing Plaintiff's job assignments. Doc. 70, pp. 13-14. At the summary judgment stage, such facts may be sufficient to show Plaintiff cannot support this claim, but at the initial pleading stage, Plaintiff has alleged a plausible First Amendment claim in the termination of his work assignment.

The due process claim cannot succeed, however. Plaintiff claimed that his due process rights were violated and, although not entirely clear, it appears that this claim is based on Plaintiff's assertion that he was not given a "fair and unincumbered [sic] review of administrative grievances" and when he was terminated from his Pride work assignment which punished Plaintiff "by loss of finances," doc. 23, pp. 11-12, and denied Plaintiff the right "to challenge punishment." *Id.*, at 7. Because an inmate does not have a constitutionally protected interest in a particular job classification, Plaintiff is not entitled to a hearing prior to a change in his work assignment. *See* Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986). An inmate has no independent constitutional right to a particular prison job. Williams v. Sumner, 648 F.Supp. 510 (D. Nev. 1986). Plaintiff also has a right to petition for redress of grievances and complaints, but Plaintiff has no protected right to an unencumbered review of his grievances. Furthermore, Plaintiff has not shown that his grievances were not fairly considered by any Defendant. The due process claims must fail as a matter of law.

**Claim against Defendant Bozeman**

The claims against Defendant Bozeman are that he gave Plaintiff boots that were too large, and contrary to the medical pass. Doc. 23, p. 6. Defendant Bozeman threatened Plaintiff to stop complaining. Plaintiff complained about the size of the boots and that they were contrary to medical orders, and it may be inferred that Defendant Bozeman ignored Plaintiff's complaint. *Id.* Defendant Bozeman then twice seized Plaintiff's properly fitting boots. *Id.*, at 6-7.

These claims against Defendant Bozeman survive the motion to dismiss for the same reasons. The inference is that Defendant Bozeman seized the properly fitting boots intentionally to cause Plaintiff pain and suffering, and as retaliation as Defendant Bozeman alleged threatened Plaintiff "not to complain anymore!" *Id.*, at 6. The motion to dismiss should be denied as to Defendant Bozeman.

Accordingly, it is **RECOMMENDED**:

1. That Defendants' motion to dismiss, doc. 70, be **GRANTED in part and DENIED in part**.

2. That Plaintiff's due process claims be **DISMISSED** for failure to state a claim.

3. That the claims against Defendant Edouard and Baldridge be **DISMISSED** for failure to properly exhaust administrative remedies.

4. That the motion be **DENIED** with regard to Plaintiff's First and Eighth Amendment claims against Defendants Young and Bozeman in their individual capacities only.

5. That this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 22, 2012.

     S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.