IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GEORGE RAYMOND JOHNSTON, III,

    Plaintiff,

v.                                                                                         CASE NO. 4:11-cv-00021-MP-CAS

GLENN E. YOUNG,
and OFFICER BOZEMAN,

    Defendants.

_____/

**O R D E R**

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation dated September 5, 2013.  (Doc. 112).  The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1).  I have made a *de novo* determination of any timely filed objections.  Having considered the Report and Recommendation, and any objections thereto timely filed, I have determined that the Report and Recommendation should be adopted in part and rejected in part.

On May 2, 2011, Plaintiff filed his Second Amended Complaint alleging, *inter alia*, claims against Defendants Glenn Young and Officer Bozeman for violations of the Eighth Amendment's proscription of cruel and unusual punishment in prison conditions, as well as claims for First Amendment retaliation.  (Doc. 23).[1]  He specifically alleges that Defendants,

---

[1] As the Magistrate Judge's Report and Recommendation notes, these are the only claims remaining in this litigation.  *See* Doc. 112 at 1 n.1.  This Court previously dismissed all of Plaintiff's additional claims.  *See* Docs. 75, 87.

officers of Madison Correctional Institution, routinely issued and required Plaintiff, an inmate, to wear boots that were either too small or too large, despite medical recommendations to the contrary. *Id.* at 5-7. As a result, Plaintiff developed serious injuries to his feet. *Id.* Plaintiff filed numerous grievances about the boots, both formal and informal. Defendants allegedly retaliated against these grievances by changing Plaintiff's employment status and taking away Plaintiff's boots altogether. *Id.* at 6-7.

Defendants filed a motion for summary judgment as to both the Eighth and First Amendment claims. (Doc. 98). After an exhaustive and comprehensive examination of the evidence, the Magistrate Judge's Report and Recommendation found that Plaintiff had not objectively shown that he suffered a "sufficiently serious" injury so as to constitute an Eighth Amendment violation. *See Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010). The Report, therefore, recommended granting Defendants' motion as to Plaintiff's Eighth Amendment claims. *See* Doc. 112 at 31-33, 37. It also recommended granting summary judgment of Plaintiff's First Amendment retaliation claim against Defendant Bozeman, finding that Plaintiff had failed to present any evidence demonstrating a causal relationship between Plaintiff's grievances and Bozeman's alleged retaliatory actions. *Id.* at 36. However, the Report found that Plaintiff had created a genuine issue of material fact as to his First Amendment retaliation claim against Defendant Young. *Id.*

**A. Summary of Facts**

The Court adopts the factual findings of the Report and Recommendation; however, for purposes of this Order, the following facts are restated in a light most favorable to Plaintiff. As of January 6, 2009, Plaintiff was an inmate at the Madison Correctional Institution. On that date, Plaintiff underwent a consultation with a nurse who noted in Plaintiff's medical records that

Plaintiff was wearing a pair of size 15 boots.  *See* Doc. 98, Ex. C at 2, 9.  On January 26, 2009, Physicians Assistant (P.A.) Mosley examined Plaintiff and noted that Plaintiff had blisters on his feet as well as decreased sensation in his big toes.  *Id.* at 2, 11.  P.A. Mosley wrote a Health Slip/Pass for Plaintiff to obtain a pair of size 16 regular width boots from the prison's laundry.  *Id.* at 2, 51.

At that time, Defendant Bozeman was assigned as the laundry officer at Madison C.I.  *See* Doc. 98, Ex. D at 1.  When Plaintiff reported to laundry with his Health Slip/Pass, the largest boot size, according to Bozeman, was a 15 regular.  *Id.* at 2.  Bozeman contacted Shoe Repair to obtain the larger size.  *Id.*  He issued Plaintiff a pair of refurbished boots, although he does not indicate the size of the boots issued.  *Id.*

Subsequently, on July 29, 2009, P.A. Mosely examined Plaintiff again and noted that Plaintiff had good sensation in his feet, thick toenails, and toenail fungus.  *See* Doc. 98, Ex. C at 2, 16.  P.A. Mosley saw Plaintiff next on October 28, 2009, and noted that a thick, dark toenail was growing out and Plaintiff's fungus was improving.  *Id.* at 2, 20.  On December 17, 2009, Plaintiff consulted with Nurse Denson for eye irritation and black toes.  *Id.* at 2, 21.  Denson noted that Plaintiff was suffering from black toes from boots that were too small and that Plaintiff's great toes were severely hardened from the boots.  *Id.*  P.A. Mosley examined Plaintiff again on December 30, 2009, and noted only that Plaintiff was suffering from calluses on the tips of his toes, caused by his boots being too small.  *Id.* at 2, 22.  The record from December 30th indicates that Plaintiff was wearing a pair of size 16 boots at that time, in accordance with P.A. Mosley's prior recommendation.  *Id.*  She changed the prior recommendation, issuing a new Health Slip/Pass for a pair of size 17 regular width boots.  *Id.* at 2, 22, 51.

Plaintiff then reported to Defendant Bozeman to obtain the larger pair of boots.

Defendant Bozeman claims that he "attempted to accommodate [Plaintiff] with the types of boots available through Shoe Repair." Doc. 98, Ex. D at 2. However, according to Plaintiff, Defendant Bozeman provided him with a pair of size 18 EEE boots that were "way too large." *See* Doc. 98, Ex. I at 1.

Plaintiff's medical records indicate that on January 29, 2010, he had good sensation in his feet. *See* Doc. 98, Ex. C at 3, 23. However, on February 8, 2010, Plaintiff filed an informal grievance indicating that he was suffering from blisters from his size 18 EEE boots. *See* Doc. 98, Ex. I at 1. He asked to have a medical pass re-issued for size 17 regular width boots. *Id.* The informal grievance was denied. The denial noted that Plaintiff did not need medical shoes, only a larger size. It also advised Plaintiff to direct his request for a larger size to security. *Id.*

On February 12, 2010, Plaintiff filed a formal grievance with the Florida Department of Corrections (FDOC). *Id.* at 2. Therein, Plaintiff again complained about his improperly fitting boots. Defendant Young responded to the grievance, returning it without action as Plaintiff had failed to follow grievance rules. Doc. 98, Ex. I at 4; Ex. J at 2.

During this time, Plaintiff was working for Prison Rehabilitative Industries and Diversified Enterprises (PRIDE). *See* Doc. 98, Ex. F at 1; Ex. G. At some point between January and March of 2010, Lieutenant Seago conducted a routine search of the PRIDE warehouse and discovered that Plaintiff was in possession of two pairs of boots. Doc. 98, Ex. D at 3; Ex. E at 6, 7. Defendant Bozeman confronted Plaintiff and found that Plaintiff "had in his possession one pair of state issued refurbished boots and a second pair of smaller boots that he was wearing." Doc. 98, Ex. D at 3. One pair was allegedly size 17 regular width, issued by PRIDE. Doc. 98, Ex. E at p.6-8.

Defendant Bozeman allowed Plaintiff to choose which pair of boots he wanted to keep.

Doc. 98, Ex. D at 3; Ex. E at 7.  Bozeman could have issued Plaintiff "a disciplinary report for possession of a contraband second pair of boots."  Doc. 98, Ex. D at 3; *see also* Doc. 98, Ex. E at 7.  According to Defendant Bozeman, as well as PRIDE employees Ron Parker and Eric Byrd, PRIDE does not have the authority to issue clothing, such as boots, to inmates.  *See* Doc. 98, Ex. D at 2; Ex. G; Ex. H.  Only the Department of Corrections has the authority to issue clothing, and clothing obtained by other means is considered contraband.  *See id.*  Further, "an inmate may only possess one pair of state issued footwear, either a pair of canvas shoes or a pair of boots."  Doc. 98, Ex. D at 2; *see also* FLA. ADMIN. CODE R. 33-602.201(4)(a) app. 1 (noting that inmates are allowed to possess only one pair of state issued footwear).

Subsequently, on March 12, 2010, Plaintiff filed a second formal grievance.  *See* Doc. 98, Ex. I at 5-6.  Defendant Young issued a formal response on March 30, 2010.  *Id.* at 7.  According to the response, prison staff conducted an investigation into the grievance and found that Plaintiff had been issued "five different pairs of state boots" since his transfer to Madison C.I., each of which Plaintiff "complained about."  *Id.*  These boots were issued in "multiple attempts to provide [Plaintiff] with boots that he would be satisfied with."  Doc. 98, Ex. J at 2.  The response also noted the aforementioned incident at PRIDE and that Plaintiff was given the opportunity to choose which pair he wanted.  Despite this, Plaintiff still brought his second formal grievance.  Doc. 98, Ex. I at 7.

The response concluded that in light of the many unsuccessful attempts to accommodate Plaintiff, the prison would take away Plaintiff's boots, issue him a pair of size 17 canvas shoes, and change Plaintiff's job assignment to one that did not require boots.  *Id.*  The response also acknowledged Plaintiff's right to appeal these decisions and instructed Plaintiff on how to pursue such an appeal.  *Id.*

Defendant Young avers that the decision to issue canvas shoes and change Plaintiff's job assignment was not his and was made by other staff. Doc. 98, Ex. J at 2-3. However, he admits that had it been his decision, he "would have considered changing the job assignment for additional reasons," including the fact that Plaintiff "improperly obtained" a second pair of boots while working for PRIDE. *Id.* at 3.

Consequently, in early April 2010, Defendant Bozeman was informed that Plaintiff was to be issued canvas shoes "in order to accommodate his large foot size." Doc. 98, Ex. D at 3. PRIDE provided a pair of size 17 canvas shoes to laundry. *Id.* Defendant Bozeman then issued those shoes to Plaintiff and took away Plaintiff's boots. *Id.*

Plaintiff then filed three grievance appeals with the FDOC concerning his alleged ill-fitting boots. Doc. 98, Ex. I at 8-34. He also submitted two inmate requests on June 8th and 14th to be re-assigned to PRIDE. Doc. 104, Exs. L, M. Defendant was then transferred to Avon Park Correctional Institution on July 29, 2010. Doc. 98, Ex. C at 30. Plaintiff had previously requested this transfer on October 21, 2009, well before the issuance of either the Health Slip/Pass for size 17 boots or Defendant Young's grievance response. *See* Doc. 98, Ex. F.

## B. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate only where the court is satisfied that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In its analysis, the court must "draw all reasonable inferences in favor of the non-moving party, [but] not all *possible* inferences." *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added). The moving party bears the initial burden of demonstrating the absence of a

triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If successful, the burden then shifts to the non-moving party to produce "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).

## C. Plaintiff's Eighth Amendment Claims

Turning first to Plaintiff's Eighth Amendment claims against Defendants Bozeman and Young, the Court agrees with the Magistrate Judge's recommendation that these claims be dismissed by summary judgment. To establish a violation under the Eighth Amendment for either specific conditions of confinement, excessive use of force, and/or deliberate indifference to a prisoner's medical needs, Plaintiff must make a two-prong showing. First, he must make "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities.'" *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, he must make a "subjective showing that the official had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

Concerning the objective showing, the Supreme Court has found that "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Relatively minor injuries or conditions suffered by prisoners are, therefore, not actionable under the Eighth Amendment. *Id.* at 9. Concerning the subjective showing, Plaintiff must show that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. at 837.

The Report and Recommendation found that although Plaintiff had satisfied the subjective showing under the second prong, he had failed to create a genuine issue of material

fact as to the objective prong.  It found that the relevant time period for examining the objective standard would fall between those dates during which Defendants did not comply with the two Health Slip/Passes.  Looking at the facts in a light most favorable to Plaintiff, on January 26, 2009, Plaintiff was issued a Health Slip/Pass for a pair of size 16 regular width boots.  *See* Doc. 98, Ex. C at 2, 51.  Defendants must have complied with this Pass as on December 30, 2009, P.A. Mosley noted that Plaintiff was wearing size 16 boots.  *Id.* at 2, 22.  Further, none of Plaintiff's other medical records in the interim indicate that Plaintiff had failed to obtain size 16 boots.  *Id.* at 2, 16, 20-22.

Thus, the relevant time period would fall between the date of the issuance of a Health Slip/Pass for size 17 boots, December 30, 2009, and the date of Plaintiff's transfer, July 29, 2010.  *Id.* at 2, 22, 30, 51.  During this time, including his visit with P.A. Mosley on December 30, 2009, Plaintiff's records indicate that he suffered only from calluses on the tips of his toes and blisters.  *Id.* at 2, 22; Doc. 98, Ex. I at 1.  As the Magistrate Judge correctly concluded, blisters are not a sufficiently serious injury for purposes of the Eighth Amendment.  Blisters are not the type of injury that would "'require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury.'"  *Wineston v. Pack*, No. 4:06-CV-438-RH-AK, 2009 WL 3126252, at *1, *9 (N.D. Fla. Sept. 24, 2009) (quoting *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997)).  Instead, they are a form of routine discomfort that, alone, does not qualify as a sufficiently serious injury under the Eighth Amendment.  *See Harvey v. Hercule*, No. 4:11-CV-637-SPM-CAS, 2013 WL 1703439, at *6 (N.D. Fla. March 18, 2013).

In his objection to the Report and Recommendation, Plaintiff alleges that he has indeed suffered a sufficiently serious injury and permanent harm as a result of his ill fitting boots at

Madison C.I.  *See* Doc. 115.  Specifically, he alleges that his "medical records from June 2011 to present clearly indicate the substantially ill-effects of the foot circulation impairment caused by Defendants."  *Id.* at 8.  He alleges that he now suffers from "life-long lasting numbness" and "permanent loss of sensation in his toes."  *Id.* at 9, 11.  However, Plaintiff fails to support these allegations with any objective and/or verifiable evidence.  Most if not all of Plaintiff's evidence concerning these permanent injuries consists of his own subjective medical complaints, inmate requests, sick call requests, and letters.  *See, e.g.*, Doc. 104, Exs. D1, E, Q2.  Such evidence is conclusory in nature and is not sufficient to overcome summary judgment.  *See West v. Higgins*, 346 F. App'x 423, 425-26 (11th Cir. 2009).

Furthermore, even if Plaintiff objectively established the existence of these alleged permanent injuries, he must still show that he suffered these injuries as a result of Defendant's actions.  Plaintiff has failed to present any evidence regarding this causation issue.  To the contrary, Plaintiff's medical records from January 29, 2010, at Madison C.I. actually indicate that Plaintiff was experiencing "good sensation in his feet."  *See* Doc. 98, Ex. C at 3, 23.  As this record was issued after Plaintiff obtained the Health Slip/Pass for size 17 boots, the evidence actually suggests a lack of the requisite causal relationship.  Therefore, Plaintiff's Eighth Amendment claims must be denied on summary judgment.

### D.  Plaintiff's First Amendment Retaliation Claims

Turning to Plaintiff's First Amendment claims, the Court also agrees with the Magistrate Judge's Report and Recommendation that Plaintiff has failed to provide any evidence showing that Officer Bozeman's actions were done in retaliation to any grievances filed by Plaintiff.  As such, Plaintiff's First Amendment retaliation claim against Officer Bozeman must be dismissed.  However, the Court disagrees as to the Magistrate Judge's finding that Plaintiff has created a

genuine issue of material fact as to his retaliation claim against Defendant Young.

In the prison context, an inmate may engage in protected First Amendment speech by filing grievances concerning the conditions of his imprisonment. *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). Where a prison official's actions are the result of the inmate's having filed such a grievance, the inmate may be able to establish a retaliation claim. *Id.* The inmate must establish the following three elements to prevail on such a claim: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Concerning the second element, the Eleventh Circuit has explained that the "ordinary firmness" standard is an objective test that "allows for a 'weeding out' function when the injuries complained of are trivial or amount to no more than *de minimis* inconvenience in the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005). As an objective test, a showing of an actual chilling effect on the inmate's speech is not necessary. *Id.* at 1254. However, "'how [the inmate] acted might be evidence of what a reasonable person would have done.'" *Id.* at 1255 (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)).

In this case, it is undisputed that Plaintiff's filing of these informal and formal grievances constitutes protected speech. *See* Doc. 98 at 19. However, as to the second element, Plaintiff has failed to show that Defendant Young's conduct resulted in even a *de minimis* inconvenience to the exercise of First Amendment rights. The facts viewed in a light most favorable to Plaintiff show that over the course of his time at Madison C.I., Plaintiff made a series of informal and

formal grievances concerning the size of his boots and was issued five different pair of boots in multiple attempts to accommodate him.  Doc. 98, Ex. I at 1, 2, 5-7; Ex. J at 2.  Plaintiff filed his second formal grievance on March 12, 2010.  Doc. 98, Ex. I at 5-6.  In response, Defendant Young indicated that because of the many unsuccessful attempts to accommodate Plaintiff, Plaintiff would be issued a pair of canvas shoes, his boots would be taken away, and his job assignment would be changed to one that did not require boots.  Doc. 98, Ex. I at 7; Ex. J at 2.  Young's response also instructed Plaintiff on how to appeal these decisions.[2]  *Id.*

The Report and Recommendation determined that because these outcomes constitute "adverse consequences to Plaintiff," Plaintiff has created a genuine issue of material fact as to his retaliation claim against Defendant Young.  Doc. 112 at 36.  However, while such outcomes may constitute adverse consequences, it is unclear how they would likely deter a person of ordinary firmness from engaging in subsequent grievances.  Typically, deterrence under the second element is accomplished through a threat, be it a threat of "something drastic," physical violence, or other consequence.  *See, e.g.*, *Woods v. Valentino*, 511 F. Supp. 2d 1263, 1283 (M.D. Fla. 2007); *Pittman v. Tucker*, 213 F. App'x 867, 871 (M.D. Fla. 2007).  Generalized negative statements alone are not sufficient to satisfy this element.  *Cranford v. Hammock*, No. 1:09-CV-00070-MP-AK, 2010 WL 916031, at *7 (N.D. Fla. March 11, 2010).

In this case, the Defendant Young's response did not include a threat of something drastic or even a negative statement implicating potential future grievances.  To the contrary, the

---

[2] Specifically, Defendant Young's denial indicated that the Plaintiff could "obtain further administrative review of [Plaintiff's] complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form and providing attachments as required by 33-103.007(3)(a) and (b), and forwarding [Plaintiff's] complaint to the Bureau of Inmate Grievance Appeals at Central Office in Tallahassee."  *See* Doc. 98, Ex. I at 7.

response included language that both anticipated future grievances and actually instructed Plaintiff on how to pursue such grievances.  Doc. 98, Ex. I at 7.  Plaintiff subsequently acted on these instructions by filing three grievance appeals with the FDOC.  Doc. 98, Ex. I at 8-34.  He also filed two inmate requests to be re-assigned to PRIDE.  Doc. 104, Exs. L, M.  Although not dispositive on the deterrence issue, Plaintiff's failure to be deterred by Defendant Young's actions suggests that a person of ordinary firmness would not likely be deterred.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005); *Cranford*, 2010 WL 916031, at *7.

Further, Plaintiff has also failed to satisfy his burden under the third element of his retaliation claim.  Under this element, Plaintiff must produce affirmative evidence establishing that but-for his filing of the grievances, Defendant Young would not have engaged in the alleged retaliatory actions.  *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *Cranford*, 2010 WL 916031, at *8.  Mere "conclusory allegations" or "general attacks" upon Defendant Young's motivations are not sufficient.  *Cranford*, 2010 WL 916031, at *8.  As this Court has previously recognized, "it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect."  *Id.*  Prison officials "may appropriately respond to the content of an inmate's grievance without violating the inmate's constitutional rights." *Glenn v. Gillis*, No. 5:12-CV-260-RS-GRJ, 2013 WL 4096206, at *6 (N.D. Fla. Aug. 13, 2013).  As such, "'[c]ourts should approach prisoner claims of retaliation with skepticism and particular care due to the near inevitability that prisoners will take exception with the decisions of prison officials and the ease with which claims of retaliation may be fabricated.'"  *Id.* (quoting *Cranford*, 2010 WL 916031, at *8); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Once Plaintiff has made a prima facie showing of retaliatory harm, "the burden shifts to [Defendant Young] to demonstrate that even without the impetus to retaliate he would have

taken the action complained of." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). If Defendant Young shows "'that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment.'" *Moton v. Cowart*, 631 F.3d 1337, 1342 (11th Cir. 2011) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Here, Defendant Young has established legitimate and compelling reasons for his actions that do not involve a retaliatory motive. The denial itself indicates that since Plaintiff's arrival at Madison C.I., Plaintiff had been issued five different pairs of state boots in multiple attempts to accommodate Plaintiff. Doc. 98, Ex. I at 7; Ex. J at 2. By taking away the boots and issuing canvas shoes, Defendant Young simply pursued an alternative avenue by which to accommodate Plaintiff. Doc. 98, Ex. I at 7; Ex. J at 2; Doc. 113 at 8, 13. Further, regardless of whether Defendant Young was responsible for Plaintiff's change in job status, Defendant Young would have still considered the change due to Plaintiff's improperly obtaining a second pair of boots through PRIDE. Doc. 98, Ex. J at 2-3; Doc. 113 at 7, 8, 13. Each of these explanations is a legitimate reason for pursuing the course of action taken in Defendant Young's grievance response.

This lack of a retaliatory motive is also bolstered by the fact that the grievance response both acknowledged Plaintiff's right to appeal the response and instructed him on how to pursue such an appeal. *See* Doc. 98, Ex. I at 7. Inclusion of such language would be counterintuitive to a prison official bent on silencing a prison's grievances through retaliatory means. Further, Plaintiff's grievances, both formal and informal, concern only his alleged improper boot size. Plaintiff filed no complaints about or grievances against either Defendant Young or any other particular prison official. As the Eleventh Circuit has previously found, "[t]he lack of complaints about or grievances filed against a particular defendant undermines a claim of

retaliatory motive." *Glenn v. Gillis*, 5:12-CV-260-RS-GRJ, 2013 WL 4096206 (N.D. Fla. Aug. 13, 2013) (citing *Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011)).

Since Defendant Young has established legitimate and compelling reasons for his actions that do not involve a retaliatory motive, the burden is on Plaintiff to provide affirmative evidence showing such a motive. However, Plaintiff has "neither rebutted nor discredited the explanation given by" Defendant Young. *Glenn*, 2013 WL 4096206, at *5. Absent evidence to the contrary, the record demonstrates that the taking away of Plaintiff's boots and the issuance of canvas shoes simply constitute a legitimate, alternative means of solving what Defendant Young had found to be an ongoing problem. Although Plaintiff may take exception with Defendant Young's decision, such dissatisfaction does not alone transform a prison official's grievance response into unconstitutional retaliation. *See Glenn*, 2013 WL 4096206, at *6. As such, Plaintiff has failed to meet his burden and his First Amendment retaliation claim against Defendant Young cannot survive summary judgment.

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. The factual findings of the Magistrate Judge's Report and Recommendation (Doc. 112) are adopted and incorporated herein. The recommendations therein are adopted in part and rejected in part.

2. Defendants' Motion for Summary Judgment (Doc. 98) is GRANTED and the Clerk is directed to enter judgment for the Defendants on all claims.

**DONE AND ORDERED** this   *28th*   day of March, 2014

                           *s/Maurice M. Paul*
                          Maurice M. Paul, Senior District Judge